UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHAQUANA WOODING, AS ) <br> ADMINISTRATOR OF THE ESTATE ) <br> OF TYCHELLE WHITEHEAD, ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> CITY OF HARTFORD, ZACHARY ) <br> FREETO, MALIK LYONS, and ) <br> BRENDON A. LYTTON ) <br> *Defendants*. ) | 3:22-CV-617 (SVN) <br><br><br><br><br><br><br> September 30, 2024 |

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Chaquana Wooding, as administrator of the estate of Tychelle Whitehead, has sued the City of Hartford, two Hartford Police Department officers—Defendants Zachary Freeto and Brendon A. Lytton—and a Hartford Police Department call taker/dispatcher—Defendant Malik Lyons.  She argues Defendants were negligent and reckless, and deprived Ms. Whitehead of her constitutional rights, when they failed to properly respond to a 911 call made by a caller apparently experiencing breathing distress in the early morning hours of April 30, 2020.  Plaintiff contends that, had Defendants properly responded to the call, they would have discovered and assisted Ms. Whitehead, the presumed caller, before she died.

The City of Hartford and the individual Defendants have moved for summary judgment, contending that there are no genuine disputes of material fact regarding Plaintiff's claims for negligence, recklessness, and violations of the United States and Connecticut Constitutions, and that, as a result, they are entitled to judgment as a matter of law.  Plaintiff opposes the motion.  For the reasons explained below, the Court agrees with Defendants that summary judgment is appropriate, and therefore GRANTS their motions.

I.      FACTUAL AND PROCEDURAL BACKGROUND

A. <u>Plaintiff's Failure to Timely File a Local Rule 56(a)2 Statement</u>

The Court begins with a procedural matter. In support of their motions for summary judgment, the individual Defendants (Freeto, Lyons, and Lytton) filed a Local Rule 56(a)1 Statement of Undisputed Material Facts ("Defs.' L.R. 56(a)1 St."), as required by the Court's Local Rules. *See* Defs.' L.R. 56(a)1 St., ECF No. 39-2; D. Conn. L.R. 56(a)1. The City of Hartford incorporated that statement of facts as its own. *See* ECF No. 40-2. After being granted two months' worth of extensions to file her response to Defendants' motions, Plaintiff filed an opposition brief with various exhibits, *see* ECF No. 46, but did not file a Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment, as required by the Local Rules.

Five days after Defendants' reply briefs highlighted this omission, Plaintiff moved for leave to file a Local Rule 56(a)2 statement, claiming the omission was due to "accident, inheritance or mistake," but failing to provide any details about what such "accident, inheritance or mistake" was. Mot. for Permission to File L.R. 56(a)2 St., ECF No. 51 at 1. Although the proposed Rule 56(a)2 Statement was attached to the motion, the Court denied it because Plaintiff had not established cause, much less good cause, for the untimely submission. Order, ECF No. 52.

The Local Rules provide that "[e]ach material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." D. Conn. L.R. 56(a)1. Accordingly, because Plaintiff failed to timely file a Local Rule 56(a)2 Statement, the Court deems the facts in Defendants' Local Rule 56(a)1

Statement admitted, where they are supported by evidence in the record. *See Johnson v. Conn. Dep't of Admin. Servs.*, 972 F. Supp. 2d 223, 229 (D. Conn. 2013).

### B. Relevant Facts

On April 30, 2020, Defendant Lyons was working as a Hartford Police call taker/dispatcher. Defs.' L.R. 56(a)1 St. ¶ 1; Def. City of Hartford Br., ECF No. 40-1 at 3 (citing to City's Answer and Affirm. Defenses, ECF No. 21 ¶ 4, identifying Lyons as being employed as a police dispatcher).[1] In this role, Lyons was responsible for receiving emergency calls for service and determining the appropriate agency to handle the issue. Defs.' L.R. 56(a)1 St. ¶ 1. If the emergency call raised a matter for police, Lyons would enter it into the computer system and then pass the information along to the police dispatcher, who would then dispatch police officers to the call. *Id.*

On April 30, 2020, at approximately 4:31 a.m., Lyons received a 911 call from cellular telephone number (860) 268-5696. *Id.* ¶ 3. Lyons tried to communicate with the caller about the reason for the call, but was unable to obtain any information because the call was "basically an open line, where no one was saying anything." *Id.* ¶¶ 4–5. To Lyons, it sounded like the caller was having trouble breathing. *Id.* ¶ 6.

Lyons pushed a button on his screen called "Repeat Alley," which attempts to obtain the general location from where a cell phone call is originating. *Id.* ¶ 7. This command showed that the call could have been originating from two different streets in West Hartford, Connecticut. *Id.* ¶ 8. With the 911 call still open, Lyons connected with the West Hartford Police Department. *Id.* ¶ 9. He asked if West Hartford Police had any history for the telephone number; they reported that a system called Rapid SOS showed that the call was coming from the general vicinity of 51 Grant

---

[1] In his deposition, Lyons explained that he could work "call intake" or as a dispatcher on a particular shift, depending on where his supervisor assigned him. Lyons Dep., ECF No. 46-1 at 62.

3

Street in Hartford. *Id.* ¶ 10. Lyons then began to initiate services to the area of 51 Grant Street in Hartford by typing the address into the system, which the police dispatcher would see. *Id.* ¶ 11. After he reached the West Hartford Police Department, Lyons disconnected the 911 call; he tried calling the number back twice, but no one answered. *Id.* ¶ 14.

The police dispatcher who was working on April 30, 2020, was Melissa Ferguson. *Id.* ¶ 2. Ferguson observed the location of 51 Grant Street in the system and then dispatched Defendants Lytton and Freeto, both Hartford Police Department officers, to the area of 51 Grant Street "for a 911 hang up by someone who might be in distress." *Id.* ¶ 12.

Lytton and Freeto arrived on scene, and each began knocking on doors on one side of Grant Street, trying to make contact with homeowners. *Id.* ¶ 13.

Meanwhile, Lyons called Sprint, the servicer for the caller's cell phone number, to obtain subscriber information for the number. *Id.* ¶ 15. Sprint reported that the subscriber was Charles Wooding, with an address in Vernon, Connecticut. *Id.* Lyons then contacted the Vernon Police Department, informed them of the situation, and asked that they check the Vernon address provided by Sprint. *Id.* ¶ 16. Lyons also tried calling the phone number again four times, but no one answered. *Id.* ¶ 17.

Lyons then checked the Hartford Police Department's in-house computer system and determined that there was a Charles Wooding associated with 58 Grant Street in Hartford; he inputted that information into the system at approximately 4:39 a.m. *Id.* ¶ 18. At approximately 4:40 a.m., "give or take a minute," Ferguson informed Freeto and Lytton of the address of 58 Grant Street. *Id.* ¶ 19. At the time of the relevant events, Diana Whitehead resided at 58 Grant Street in Hartford with her daughter, Tychelle Whitehead, who lived in an in-law apartment in the basement of the home. *Id.* ¶¶ 20–21.

4

At about 4:41 a.m., Freeto went to 58 Grant Street, walked up the driveway, and knocked on the rear door. *Id.* ¶ 22. A woman came to an elevated opened window and spoke with him, assuring him that everything was fine in the home. *Id.* The woman was Diana Whitehead, who told Freeto that she was "in bed asleep" and it was not her who had called; she directed Freeto to a blue house across the street, where she said there was a woman who "always calls 911." *Id.* ¶ 23. After this conversation, at about 4:42 a.m., Freeto radioed into dispatch, stating: "making contact with resident at 58 Grant and she stated she's all set and the only one home, so it's not 58." *Id.* ¶ 24; *see also* Exhibit F – Police Dispatch Audio, ECF No. 39-7.

About ten minutes after her conversation with Freeto, Diana Whitehead went to her basement and found her daughter, Tychelle, deceased. Defs.' L.R. 56(a)1 St. ¶ 25.[2]

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in

---

[2] Plaintiff's proposed Local Rule 56(a)2 was further deficient in that it did not set forth a reproduction of each numbered paragraph of the Local Rule 56(a)1 Statement, as required by Local Rule 56(a)2. *See* Pl.'s Proposed L.R. 56(a)2 St., ECF No. 51-1. In any event, Plaintiff denied only two of Defendants' facts, relating to Officer Lytton's activities at 51 Grant Street (paragraph 13) and the timing of Diana Whitehead's discovery of her daughter, deceased (paragraph 25). To the extent there are factual disputes raised by these denials, they are not material, and therefore do not preclude summary judgment in Defendants' favor.

5

dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

### III.  DISCUSSION

Plaintiff alleges three counts against all Defendants:  (1) negligence, through Defendants' failure to conduct a thorough search of the area of 58 Grant Street; failure to contact the residents of 58 Grant Street; and failure to inspect the basement apartment of 58 Grant Street; (2) recklessness, with the same allegations; and (3) civil rights violations, alleged under 42 U.S.C. §§ 1981, 1983, and 1988 and Articles First, §§ 7, 9, and 10 of the Connecticut Constitution.  Compl., ECF No. 1-1.

The Court holds that Defendants are entitled to summary judgment as to each of the counts in the complaint.  First, Defendants are entitled to governmental discretionary immunity as to Plaintiff's negligence claim.  Second, Plaintiff's recklessness counts simply incorporate her negligence allegations and do not state a claim for recklessness.  Third, Plaintiff's constitutional claims each fail.[3]

#### A.  Count One:  Negligence

To begin, the individual Defendants and the City of Hartford are immune from Plaintiff's negligence claim, which alleges that Defendants negligently failed to conduct a thorough search of the area of 58 Grant Street, failed to contact the residents of 58 Grant Street, and failed to inspect the basement apartment of 58 Grant Street.

##### 1.  Discretionary Act Immunity

Under Connecticut law, "a municipal employee . . . has a qualified immunity in the performance of governmental acts" that are "performed wholly for the direct benefit of the public

---

[3] As noted below, the Court grants summary judgment to Defendants on Plaintiff's only federal claims, those alleged in Count Three under 42 U.S.C. §§ 1981, 1983, and 1988.  Following dismissal of all federal claims in an action, the Court could decline to exercise supplemental jurisdiction over Plaintiff's state law claims for negligence, recklessness, and Connecticut constitutional violations.  *See* 28 U.S.C. § 1367(c)(3).  But because the state law claims are based on the same set of facts as the federal claims, and because this action has been pending in federal court for some time, the Court believes that the values of judicial economy and fairness weigh in favor of exercising supplemental jurisdiction over the state law claims.  *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018).

and are supervisory or discretionary in nature." *Violano v. Fernandez*, 280 Conn. 310, 318 (2006). Likewise, municipalities are "statutorily immune from negligence liability resulting from the discretionary acts of their employees, officers and agents." *Doe v. Petersen*, 279 Conn. 607, 609 (2006); *see* Conn. Gen. Stat. § 52-557n(a)(2)(B). The "hallmark of a discretionary act is that it requires the exercise of judgment." *Violano*, 280 Conn. at 318. Discretionary act immunity "reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." *Petersen*, 279 Conn. at 615. "[A]s a general rule, police officers are protected by discretionary act immunity when they perform the typical functions of a police officer." *Borelli v. Renaldi*, 336 Conn. 1, 13 (2020) (cleaned up; quoting *Ventura v. Town of E. Haven*, 330 Conn. 613, 631 (2019)).

Municipal officials and municipalities can be liable, however, for the negligent performance of ministerial acts, defined as acts "to be performed in a prescribed manner without the exercise of judgment or discretion." *Id.*; *see also Violano*, 280 Conn. at 318. "[T]o demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, *by its clear language*, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion." *Doe v. Town of Madison*, 340 Conn. 1, 31–32 (2021).

If an official performed a discretionary act, he may still be liable for negligence if one of three exceptions to discretionary act immunity applies. Each of these exceptions "represents a situation in which the public official's duty to act is so clear and unequivocal that the policy

8

rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." *Petersen*, 279 Conn. at 615 (cleaned up).  Liability may be imposed for:  (1) a discretionary act when the alleged conduct involves malice, wantonness, or an intent to injure; (2) a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; or (3) when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm.  *Id.* at 615–16.

2. *Discussion*

Here, it is clear that the individual Defendants were performing discretionary acts, rather than ministerial acts, when they set out to find the 911 caller and ended their inquiry at 58 Grant Street after Diana Whitehead assured Freeto that everything was fine in her home.  Connecticut cases recognize that the typical functions of a police officer involve discretionary acts.  *Borelli*, 336 Conn. at 13.  Freeto and Lytton were performing such typical functions—investigating whether there was a need to assist someone apparently in distress—when they spoke with Diana Whitehead.  Lyons, too, was performing discretionary acts in trying to identify the location of the 911 call and direct police to the proper location.  The immunity to which the individual Defendants are entitled also flows to the City.

Plaintiff's arguments to the contrary are unavailing.  First, Plaintiff cites to various sections of the Code of Conduct for Hartford Police Officers as establishing the ministerial duties for police officers, Pl.'s Opp. Br., ECF No. 46 at 12, but provides no argument as to how any of these sections would have compelled Freeto or Lytton[4] to act in a different manner, without the exercise of any judgment or discretion.  Moreover, the Code of Conduct sets forth only general responsibilities,

---

[4] With respect to Lyons, a Hartford call taker/police dispatcher, Plaintiff provides no evidence or argument that the Code of Conduct applicable to the Hartford Police Department would even apply.

9

leaving the details of how to comply with the policies to the discretion of officers; acts conducted under such general policies do not constitute ministerial acts. *See Northrup v. Witkowski*, 175 Conn. App. 223, 237–38 (2017), *aff'd*, 332 Conn. 158, 210 A.3d 29 (2019) (noting that where municipal standards do not "mandate the manner" in which officials should "endeavor to meet" their responsibilities under the standard, the duty is discretionary).  Nor does Plaintiff's expert's quite general opinion that Defendants "failed accepted police standards in this case," including by failing to be properly trained in the RapidSOS system or in responding to 911 calls, suggest that their actions were so prescribed as to be ministerial, rather than discretionary.  ECF No. 46 at 10.  For those reasons, the Court concludes that the individual Defendants and, by extension, the City of Hartford, are entitled to discretionary act immunity.

Plaintiff has not demonstrated that a genuine dispute of material fact exists with respect to any of the recognized exceptions to discretionary act immunity.  She relies only on the third, imminent harm exception. *Petersen*, 279 Conn. at 615.  The exception requires: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Id.* at 616.  If any one of these elements is missing, the exception does not apply. *Id.* at 621.  The imminent harm exception applies where "the danger involved a limited time period and limited geographical area . . . [and] the risk of harm was significant and foreseeable." *Violano*, 280 Conn. at 331.

Plaintiff invokes this exception with only conclusory arguments that Defendants should have known their failure to act would subject an identifiable person to imminent harm.[5]  But she

---

[5] The individual Defendants argue that Plaintiff did not plead this exception in her complaint, and therefore did not put Defendants on notice that she would pursue it.  While the individual Defendants cite to Connecticut cases that have language suggesting that a plaintiff must "plead and prove" an exception to governmental immunity, *see* Individual Defs.' Reply, ECF No. 49 at 3–4, there is no procedure for replying to a defendant's affirmative defenses, like discretionary act immunity, in federal court, as the individual Defendants claim.  Therefore, the Court is not convinced that Plaintiff's failure to raise this exception to governmental immunity in her pleadings is necessarily fatal.  But it fails on the merits, in any event.

10

provides no evidence (or argument) that the risk of harm was imminent, significant, or foreseeable to the individual Defendants, particularly given that Freeto spoke with Diana Whitehead at 58 Grant Street, who reported that the call had not come from her home and, according to Freeto's radio dispatch, that "she's all set and the only one home, so it's not 58." Def.'s L.R. 56(a)1 St. ¶ 24. Officer Lytton also recalled that Diana Whitehead said "[e]veryone is fine" and that she did not want the remainder of her home checked. Lytton Dep., ECF No. 46-2 at 33–34.

Instead, Plaintiff argues that the individual Defendants were improperly trained and violated their respective standards of care: she contends, based on her expert's testimony, that Lyon was improperly trained in the Rapid SOS system and Freeto and Lytton were "not properly trained and supervised in responding to 911 calls." ECF No. 46 at 10. In addition to being conclusory, that testimony is not directed to the elements of the exception. Even assuming *arguendo* that Defendants were improperly trained, it does not necessarily follow that it should have been apparent that their actions would have caused imminent harm in that particular situation, given that they inquired at 58 Grant Street and were directed elsewhere by Diana Whitehead. The Court therefore cannot find that Plaintiff has demonstrated a genuine dispute of material fact as to whether the imminent harm exception to discretionary immunity applies.

For these reasons, the Court grants both the individual Defendants' and the City of Hartford's motions for summary judgment as to Count One.

    B.  <u>Count Two:  Recklessness</u>

The Court also grants all Defendants' motions for summary judgment on Plaintiff's recklessness claim.

To begin, Plaintiff's argument on this point is woefully deficient. The sum total of her argument is: "[a]s outlined in the discussion of facts above, Defendant Lytton's conduct was

reckless in that he totally ignored the search of 58 Grant Street. Moreover, Defendant Freeto's conduct was reckless in his utter failure to conduct an investigation of 58 Grant Street in accordance with any reasonable police conduct standards." *Id.* at 13. Plaintiff does not respond in any manner to Defendants' argument that, because she simply incorporated her negligence allegations and recast them as recklessness claims, they must fail. *See Angiolillo v. Buckmiller*, 102 Conn. App. 697, 705 (2007) (affirming trial court's grant of summary judgment to defendant where the plaintiffs "simply incorporated their allegations of negligence and labeled the conduct recklessness"). Defendants are correct on this point. Because Plaintiff has failed to address this argument, she has waived this issue. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (defining waiver as the "intentional relinquishment or abandonment of a known right"). Nor has she demonstrated any genuine dispute of material fact as to whether Defendants' conduct was an extreme departure from ordinary care, as would be required to demonstrate a recklessness claim. *Angiolillo*, 102 Conn. App. at 705.

Defendants' motions for summary judgment as to Count Two are therefore granted.

### C. Count Three: Constitutional Claims

Finally, Plaintiff purports to bring constitutional claims under 42 U.S.C. §§ 1981, 1983, and 1988, and Articles First, §§ 7, 9, and 10 of the Connecticut Constitution. All of these claims fail, for the reasons discussed below.

#### 1. Section 1981

Title 42, United States Code, Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." To establish

a claim under § 1981, a plaintiff must allege facts supporting the following elements: (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one of the statute's enumerated rights. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).

Neither Plaintiff's complaint nor her summary judgment filings make any mention of Tychelle Whitehead's race, nor any intentional discrimination that may have occurred because of her race. There is therefore no basis to conclude that Defendants intentionally discriminated against Ms. Whitehead on the basis of her race, and Plaintiff's § 1981 claim must fail.

### 2. Section 1983

#### a. Legal Standard

Title 42, United States Code, Section 1983 prohibits a person, acting under color of law, from violating another person's rights. A § 1983 claim has four essential elements: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; and (4) damages. *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 542 (D. Conn. 2006), *aff'd sub nom. Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008). Depending on the type of constitutional violation alleged, a plaintiff may need to show additional elements, as well. *Thompson v. Clark*, 596 U.S. 36, 43 (2022) (noting that, to determine the elements of a constitutional claim under § 1983, courts must look to the elements of the "most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with the values and purposes of the constitutional right at issue" (cleaned up)).

To state a § 1983 claim against a municipality, a plaintiff must prove the four elements above, and also prove that an official policy of the municipality caused the constitutional injury. *Roe*, 542 F.3d at 36. This type of municipal liability originates from *Monell v. Department of*

*Social Services of City of New York*, 436 U.S. 658 (1978), and requires a showing of two basic elements: (1) the existence of a municipal policy or custom that caused the plaintiff's injuries beyond merely employing the misbehaving officers; and (2) a causal connection—an "affirmative link"—between the policy and the deprivation of the plaintiff's constitutional rights. *Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011) (summary order) (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). "In other words, a municipality may not be found liable simply because one of its employees committed a tort," by application of the doctrine of *respondeat superior*. *Roe*, 542 F.3d at 36.

Municipal liability under *Monell* can be based on a failure to train or supervise municipal officers, when such a failure "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To demonstrate that a municipality's failure to train or supervise constitutes deliberate indifference to a plaintiff's constitutional rights, she must show that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 297–98 (citations omitted).

      b.  Discussion

Again, here, Plaintiff's analysis is extraordinarily brief. She simply states: "In our case, it is a question of fact whether [the individual Defendants] were adequately trained and supervised, and whether the lack of training and supervision by the Defendant City of Hartford resulted in

14

deliberate indifference to the needs of Tychelle Whitehead." ECF No. 46 at 14–15. Plaintiff therefore seems to be pursuing a *Monell* claim, contending that a failure in training and supervision by the City of Hartford resulted in the alleged constitutional violation.[6] But, as Defendants point out, Plaintiff did not plead a *Monell* theory of municipal liability in her complaint. That alone would be fatal to such a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (Federal Rule of Civil Procedure 8 requires a complaint to provide "fair notice of what the claim is and the grounds upon which it rests" (cleaned up) (citation omitted)).

Even analyzing a *Monell* claim on the merits, however, it would fail. First, Plaintiff has not identified a specific constitutional provision or federal law that Defendants violated, so she is missing an essential element of a basic § 1983 claim. To the extent Plaintiff alleges a violation of the privileges and immunities clause of the Fourteenth Amendment, which is the only constitutional provision invoked in the complaint, that clause is inapposite because it "prevents a State from discriminating against citizens of other States in favor of its own," s*ee Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 382 (1978)—a matter not at issue here. Nor does an alleged failure to investigate constitute a cognizable due process claim under § 1983, to the extent that is Plaintiff's theory. *See Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 34–35 (2d Cir. 2010).

Plaintiff also has not identified a particular policy of the City's that caused Ms. Whitehead's injuries. Aside from conclusory statements in her expert's deposition about the individual Defendants' failure to be "properly trained" or "properly supervised to ask pertinent

---

[6] Plaintiff's complaint does not specify whether Freeto, Lytton, and Lyons are sued in their individual or official capacities, though it notes that they were acting in their "official capacities" at the relevant times. ECF No. 1-1 at 8, Third Count, ¶ 5. The individual Defendants have argued that they are sued only in their official capacities and, as such, the suit is treated as a suit against the municipality, the City of Hartford, itself. *See Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."). As Plaintiff does not dispute this characterization in her summary judgment briefing and makes no argument that she is pursuing claims against Freeto, Lytton, and Lyons in their individual capacities, the Court treats the § 1983 claim as brought against Freeto, Lytton, and Lyons in their official capacities and therefore brought against the City itself, as a *Monell* violation.

15

questions of people who may or may not have called 911," *see* Meredith Dep., ECF No. 46-4 at 23–24, Plaintiff has submitted virtually nothing on which to base her *Monell* violation, such as her expert's report with analysis of the alleged failure to train or supervise.

More specifically, Plaintiff points to no specific training lapse that caused the incident. She does not include in the record any of the City of Hartford's training materials of police officers and call takers/dispatchers, so as to permit an assessment of whether they are sufficiently comprehensive or were sufficiently followed in this instance. Without such evidence, she cannot establish a failure to train *Monell* violation. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004) ("It is impossible to prevail on a claim that the Town's training program was inadequate without any evidence as to whether the Town trained its officers . . . , how the training was conducted, how better or different training could have prevented the challenged conduct, or how 'a hypothetically well-trained officer would have acted under the circumstances.'" (quoting *City of Canton*, 489 U.S. at 391)).

Likewise, Plaintiff provides no evidence of a failure to supervise—specifically, that a policymaking official had notice of a "potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious' . . . , and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." *Amnesty Am.*, 361 F.3d at 128 (citation omitted). There is no mention whatsoever of any supervisory policymaker's involvement in any of the decisions related to the 911 call at issue.

Plaintiff simply fails to address any of the three elements set forth in *Walker* to establish municipal liability on the basis of a failure to train or supervise. Like in *Amnesty America*, Plaintiff's submission consists of a "primer on municipal liability doctrine with almost no

application of the law to the facts of this case." *Id.* at 132. How Plaintiff could believe her four lines of argument would surmount Defendants' summary judgment motions is confounding. On the record before the Court, she has failed to demonstrate a genuine dispute of material fact that either the individual Defendants, or the City of Hartford, are liable under § 1983.

### 3. Section 1988

Title 42, United States Code, Section 1988 is most commonly cited as a mechanism for collecting attorney's fees, upon successful prosecution of an action under Sections 1981, 1983, or other civil rights statutes. *See* 42 U.S.C. § 1988(b). Section 1988 does not provide an independent cause of action. *See Suffolk Cnty. Police Benevolent Ass'n v. Trotta*, No. 22-cv-05803 (JMA) (LGD), 2024 WL 3443490, at *4 (E.D.N.Y. July 17, 2024) (collecting cases). As the Court finds that Defendants are entitled to summary judgment in full, Plaintiff is not entitled to attorney's fees under § 1988. To the extent Plaintiff intends to rely on 42 U.S.C. § 1988(a), which provides that common law may, in some cases, govern in civil rights actions, she makes no mention of this subsection in her summary judgment briefing, so the Court does not address it.

### 4. Connecticut Constitutional Claims

Finally, each of Plaintiff's claims brought under the Connecticut Constitution fail.

Again, Plaintiff offers no analysis of these claims, and the Court finds that none of the constitutional provisions cited are applicable here. Article First, § 7 pertains to unreasonable searches and seizures and warrantless searches. Article First, § 9 relates to false arrest. None of these scenarios are present in this case, as there was no search and no arrest.

Finally, Article First, § 10 provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." That clause "does not itself create

17

new substantive rights but, instead, protects access to [Connecticut's] courts." *Binette v. Sabo*, 244 Conn. 23, 30 (1998). Plaintiff offers no argument whatsoever about § 10 or its applicability to this case, and the Court therefore deems the issue waived.

### IV. CONCLUSION

For the reasons discussed in this ruling, the motions for summary judgment filed by Defendants Freeto, Lytton, and Lyons (ECF No. 39) and Defendant City of Hartford (ECF No. 40) are granted in full.

The Clerk is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2024.

                                          */s/ Sarala V. Nagala*
                                          SARALA V. NAGALA
                                          UNITED STATES DISTRICT JUDGE